# UNITED STATES DISTRICT COURT MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

BRIAN TUTTLE,

Case No.: _8:26-CV-447-MSS-NH A_

Plaintiff,

v.

SELECT PORTFOLIO SERVICING, INC.,
SELENE FINANCE, LP,
KASS SHULER, P.A.,
U.S. BANK TRUST NATIONAL ASSOCIATION
AS OWNER TRUSTEE FOR RCAF ACQUISITION TRUST,
FEDERAL HOME LOAN MORTGAGE CORPORATION ("FREDDIE MAC"),
and JOHN DOES 1–10,

FEB 17 2026 PM1:30
FILED - USDC - FLMD - TPA

Defendants.

## <u>COMPLAINT AND DEMAND FOR JURY TRIAL</u>

Plaintiff Brian Tuttle, *pro se*, brings this action against Defendants Select

Portfolio Servicing, Inc. ("SPS"), Selene Finance, LP ("Selene"), Kass Shuler, P.A.

("Kass Shuler"), U.S. Bank Trust National Association, as Owner Trustee for

RCAF Acquisition Trust ("U.S. Bank"), Federal Home Loan Mortgage

Corporation ("Freddie Mac"), and John Does 1–10, and alleges as follows:



## I. NATURE OF THE CASE

1.      This action arises from a coordinated scheme of mortgage servicing misconduct, including fraudulent inflation of escrow and judgment amounts, violations of successor-in-interest protections, dual-tracking of foreclosure proceedings, misrepresentations regarding creditor identity and debt amounts, and equity-stripping tactics perpetrated by the Defendants collectively in their roles as investors, mortgage servicers, debt collectors, and purported private-label securitized trusts.

2.      Through deliberate denials of successor rights, RESPA violations, material misrepresentations, and impositions of unauthorized charges, Defendants engaged in a pattern of conduct that culminated in the forced below-market sale of Plaintiff's inherited homestead property, resulting in the stripping of substantial equity.

3.      Specifically, Defendants: (a) violated Plaintiff's successor-in-interest rights under federal law for approximately nine months in bad faith; (b) dual-tracked the loan by pursuing a foreclosure judgment while a complete loss mitigation and assumption application was pending; (c) misrepresented the ownership of the debt and the amounts owed; (d) inflated the foreclosure judgment with fraudulent escrow charges and other improper billings; (e)

imposed attorney fees exceeding Freddie Mac guidelines without requisite affidavits or approvals; (f) transferred servicing and beneficial ownership during an active loss mitigation review; (g) ignored multiple Notices of Errors and Qualified Written Requests ("QWRs"); and (h) unlawfully enforced a due-on-sale clause against Plaintiff's inherited homestead, compelling a fire sale and depriving Plaintiff of hundreds of thousands of dollars in equity.

4.      Defendants' bad-faith denial of Plaintiff's successor-in-interest status—despite clear documentation and their own acknowledgments in foreclosure filings—served as a pretext to force the sale. By disregarding multiple QWRs seeking clarification on successor rights, debt amounts, and escrow charges, Defendants concealed material information and perpetuated misrepresentations regarding the amounts owed. This included Kass Shuler's triple billing of the same $4,097.59 amount under varying labels, misrepresentations of other owed amounts (including the final payoff), and further deceptions that contributed to the compelled sale.

5.      Defendants' conduct constitutes not mere isolated negligence but a systemic pattern, consistent with historical abuses by mortgage servicers and foreclosure mills documented by federal regulators, state attorneys general, and forensic audits, including the Florida Clerks of Court Foreclosure Fraud

Report, which identified firms such as Kass Shuler as potential participants in RICO-level violations.

6.      The subject loan was represented as a Freddie Mac-backed mortgage, subjecting Defendants to specific servicing guidelines, including caps on attorney fees and mandatory loss mitigation protocols.

7.      Plaintiff seeks compensatory damages, statutory remedies, punitive damages, declaratory and injunctive relief, and attorney's fees and costs for violations of the Real Estate Settlement Procedures Act ("RESPA") and Regulation X, the Fair Debt Collection Practices Act ("FDCPA"), the Florida Consumer Collection Practices Act ("FCCPA"), the Garn-St. Germain Depository Institutions Act of 1982, breach of contract, breach of the implied covenant of good faith and fair dealing, wrongful foreclosure, fraud, and civil conspiracy.

## II. JURISDICTION AND VENUE

8.      This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 over Plaintiff's claims arising under RESPA (12 U.S.C. § 2605 et seq.), Regulation X (12 C.F.R. § 1024.1 et seq.), the FDCPA (15 U.S.C. § 1692 et seq.), and the Garn-St. Germain Act (12 U.S.C. § 1701j-3).

9.      This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's state-law claims, as they arise from the same nucleus of operative facts.

10.      In the alternative, if diversity of citizenship exists—Plaintiff is a resident of Florida, Defendants are out-of-state entities, and the amount in controversy exceeds $75,000—this Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332.

11.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), as a substantial part of the events or omissions giving rise to the claims occurred herein, and the subject property is located in Sarasota County, Florida, within this District.

### III. PARTIES

12.      Plaintiff Brian Tuttle is an individual residing in Sarasota County, Florida. He is the heir to Fred C Tuttle and confirmed successor-in-interest to the real property located at 6315 Sturbridge Court, Sarasota, Florida 34238 (the "Property"), pursuant to 12 C.F.R. § 1024.30(d). Title to the Property transferred to Plaintiff via probate proceedings concluded in 2022.

13.      Defendant Select Portfolio Servicing, Inc. ("SPS") is a Utah corporation with its principal place of business in Utah, engaged in mortgage

servicing and acting as a debt collector and RESPA-covered servicer with respect to the subject loan.

14.      Defendant Selene Finance, LP ("Selene") is a Delaware limited partnership with its principal place of business in Texas, engaged in mortgage servicing and acting as a debt collector and RESPA-covered servicer with respect to the subject loan as successor to SPS.

15.      Defendant Kass Shuler, P.A. ("Kass Shuler") is a Florida professional association with its principal place of business in Florida, acting as foreclosure counsel and a debt collector under the FDCPA in connection with the subject loan.

16.      Defendant U.S. Bank Trust National Association, as Owner Trustee for RCAF Acquisition Trust ("U.S. Bank"), is a national banking association with its principal place of business in Minnesota, purporting to act as the transferee of the loan through an unverified and unrecorded transaction, potentially as a Freddie Mac trustee or other defendants not known at this time.

17.      Defendant Freddie Mac (Federal Home Loan Mortgage Corporation) is a federally chartered corporation headquartered in Virginia, acting as the investor or beneficial owner of the subject loan.

18.      Defendants John Does 1–10 are unknown entities or individuals involved in the fraudulent transfers, escrow manipulations, and judgment inflations alleged herein, whom Plaintiff has been unable to identify despite diligent efforts, including through QWRs and Notices of Error.

## IV. FACTUAL ALLEGATIONS

### A. Loan Origination and Historical Context

19.      The subject mortgage loan originated with Countrywide Home Loans, Inc. The promissory note bears a facsimile signature. Upon information and belief, required authentication or investor designation procedures applicable to such notes were not produced to Plaintiff despite written requests.

20.      Freddie Mac servicing guidelines mandate proper MERS investor designations and authentication or legal opinions for facsimile-signed notes, neither of which were obtained or disclosed herein. These foundational deficiencies facilitated subsequent concealments, misrepresentations, and foreclosure abuses.

### B. Probate, Notification to Servicer, and Initial Successor Requests

21.      Plaintiff's father -Fred C Tuttle- the original borrower, passed away in November 2020. Probate proceedings concluded in October 2022, transferring title to the subject Property to Plaintiff.

22.     The then-current servicer (PHH) was promptly notified of the title transfer and acknowledged receipt of the probate documents recognizing Plaintiff's Successor in Interest status.

23.     Thereafter, SPS assumed servicing responsibilities and immediately refused to recognize Plaintiff's successor-in-interest status, despite ample documentation. SPS's bad-faith denial, including spurious claims of inability to verify the death certificate notwithstanding its own foreclosure filings identifying Plaintiff as heir and receipt of public records, laid the groundwork for ensuing violations.

24.     SPS continued to assert inability to verify the death certificate despite receipt of probate documentation and public records, and did not provide a written explanation identifying specific deficiencies. This denial prevented Plaintiff from exercising assumption and loss mitigation rights.

**C. Hurricane Damage and Insurance Mismanagement**

25.     In October 2024, Hurricane Milton caused damage to the Property.

26.     Monarch National Insurance Company issued an actual cash value ("ACV") check naming the deceased borrower and SPS, rendering it unusable by Plaintiff.

27.    SPS denied knowledge of the insurance claim, despite escrow records reflecting charges for hazard insurance. SPS failed to assist with the claim, breaching explicit duties under Regulation X and Freddie Mac guidelines.

**D. SPS's Bad-Faith Denial of Successor Rights During Foreclosure Pursuit**

29.    SPS persistently claimed inability to verify the death certificate, notwithstanding:

(a) its own lawsuit against Plaintiff identifying him as heir;

(b) receipt of a public Florida death certificate; and

© prior service of probate orders.

28.    SPS exploited this fabricated impediment to refuse assumption, modification, and non-foreclosure communications, constituting bad-faith successor denial that directly precipitated the forced sale by obstructing Plaintiff's ability to assume the loan, modify terms, or access accurate debt information via ignored QWRs.

**E. Plaintiff's Loss Mitigation and Assumption Efforts**

29.    Immediately upon notice of default on the loan Plaintiff contacted SPS in written communications to explore his rights as a Successor in Interest.

30.     Plaintiff forwarded to SPS the 2022 probate order transferring title to the property to Plaintiff.

31.     SPS acknowledged receipt of the probate order but denied Plaintiff's Successor status, and with it any rights associated, claiming SPS could not verify that Plaintiff's father had passed away.

32.     On February 15, 2025, Plaintiff submitted a complete loss mitigation application, including all required information pursuant to 12 C.F.R. § 1024.41(b)(1). SPS acknowledged receipt. In conjunction therewith and thereafter, Plaintiff requested:

(a) assumption under the Garn-St. Germain Act (12 U.S.C. § 1701j-3(d));

(b) a trial modification;

© assistance with the insurance claim;

(d) forbearance as applicable; and

€ review under disaster-relief guidelines.

33.     SPS improperly demanded:

(a) full cure of the loan prior to assumption, unlawful under the Garn-St. Germain Act;

(b) modification before the loan could be assumed, unlawful under the Garn-St. Act;

(c ) Plaintiff's residency in the Property, not required for successor-in-interest status; and

(d) unspecified "missing documents," violating 12 C.F.R. § 1024.41 by failing to identify deficiencies.

Defendants' arbitrary imposition of servicing overlays—requiring the loan to be brought current prior to assumption and permitting assumption only if the loan was first modified—effectively enforced a due-on-sale clause against Plaintiff's inherited homestead, in direct violation of the Garn-St. Germain Act.

### F. Dual-Tracking of Foreclosure

34.     On February 19, 2025, Plaintiff demanded that SPS cease pursuit of judgment due to the pending review.

35.     Notwithstanding, on February 20, 2025, SPS obtained a foreclosure judgment, violating 12 C.F.R. § 1024.41(g).

36.     On February 21, 2025—the day after judgment—SPS belatedly recognized Plaintiff as successor-in-interest. This sequence resulted in entry of judgment during a pending review and directly impaired Plaintiff's ability to

pursue assumption or modification. Thereafter, Plaintiff served SPS and Selene with multiple Notice of Errors and Qualified Written Requests. SPS and Selene failed to substantially respond.

### G. Judgment Inflation, Fraudulent Escrow Charges, and Unauthorized Attorney Fees

37.    Prior to judgment, Kass Shuler provided a draft judgment totaling $198,144.41.

38.    The very next day Kass Shuler submitted judgment included:

(a) duplicate "prior servicer advances" of $4,097.59;

(b) attorney fees exceeding Freddie Mac's $5,400 cap (per Freddie Mac Guide Exhibit 57A) and 3% of principal without a required Florida affidavit; and

© a third $4,097.59 charge appeared post-judgment months later as a "2024 tax disbursement."

39.    In August 2025, upon Plaintiff's detection, Kass Shuler admitted 2 of the 3 duplicate $4,097.59 charges were mistakes and removed them; but failed to adjust for the unauthorized legal fees, or accrued 9.8% interest on the inflated amounts over six months.

40.     SPS further billed a full year of hazard insurance in April 2025, despite the pending sale, lack of justification, inaccessible ACV payment, and scheduled August 2025 foreclosure sale.

41.     These fraudulent inflations increased the judgment by thousands, impeding refinancing, assumption, or cure. Moreover, Kass Shuler's subsequent payoff quote exceeded Selene's by thousands of unexplained dollars in billing, perpetuating misrepresentations and equity-stripping.

### H. Transfer to Selene and RCAF During Active Review

42.     . In June 2025, amid Plaintiff's appeal of the denial, SPS transferred servicing to Selene and asserted sale of the debt to RCAF Acquisition Trust.

43.     This transfer violated 12 C.F.R. § 1024.41(k), requiring continuation of pending loss mitigation reviews, and Freddie Mac Guide § 9701.3 prohibiting transfers during such reviews if RCAF is a Freddie Mac investor.

44.     Post-judgment, Selene issued monthly mortgage statements, violating the FDCPA and FCCPA.

### I. Forced Sale, Fraudulent Payout Quotes, and Resulting Damages

45.     Due to Defendants' unlawful denial of assumption, judgment inflation, dual-tracking, protracted successor denial, withholding of insurance assistance, and

mid-review transfer, Plaintiff was compelled to sell the Property in a below-market distressed sale or face foreclosure auction.

46.    Misrepresentations of debt owed, bad-faith successor denials, and ignored QWRs concealed accurate disclosures, misleading Plaintiff regarding amounts owed, with bloated payoffs proximately forcing the below-market distressed sale.

47.    In August 2025 Kass Shuler represented a $223,301.16 cure amount to be wired to Kass Shuler, inclusive of fraudulent charges and inflated interest. Plaintiff wired the misrepresented amount; although at that time Defendant Selene had provided Plaintiff a written payoff quote thousands cheaper and good through the month of August.

48.    Plaintiff sold the Property to a cash buyer for $340,000, far below market value. Following hurricane repairs, the cash buyer resold it for $517,000 months later.

49.    Defendants' actions resulted in equity loss exceeding $150,000, plus associated fees from the forced sale. These damages were foreseeable and directly attributable to Defendants' violations.

## V. CAUSES OF ACTION

### COUNT I

## VIOLATION OF RESPA / REGULATION X (DUAL-TRACKING) (12 C.F.R. § 1024.41(g))

50.     Plaintiff realleges and incorporates paragraphs 1 through 49 as if fully set forth herein.

51.     Under 12 C.F.R. § 1024.41(g), a servicer is prohibited from obtaining a foreclosure judgment or conducting a foreclosure sale if a borrower or confirmed successor-in-interest has submitted a complete loss mitigation application that remains pending.

52.     Violations of § 1024.41 constitute strict liability. See Lage v. Ocwen Loan Servicing, LLC, 839 F.3d 1003 (11th Cir. 2016).

53.     SPS received Plaintiff's complete modification/assumption application on February 15, 2025. Despite notice on February 19, 2025, to halt judgment pursuit, SPS obtained judgment on February 20, 2025, violating §§ 1024.41(g), 1024.41©, and 1024.30(d).

54.     As a direct result, Plaintiff lost opportunities for assumption or modification, suffered equity loss exceeding $150,000 from the forced sale, incurred attorney fees, brokerage fees, documentary stamps, and 9.8% judgment interest, entitling him to actual damages, statutory damages, and attorney's fees under 12 U.S.C. § 2605(f).

## COUNT II

## VIOLATION OF RESPA / REGULATION X (FAILURE TO RESPOND TO NOTICES OF ERROR AND QWRS) (12 C.F.R. §§ 1024.35, 1024.36)

55.      Plaintiff realleges and incorporates paragraphs 1 through 49 as if fully set forth herein.

56.      Servicers must acknowledge Notices of Error ("NOEs") and QWRs within five business days and respond substantively within thirty business days.

57.      SPS and Selene ignored multiple NOEs and QWRs demanding explanations regarding successor denial, improper assumption requirements, payoff discrepancies, escrow charges, investor identity, and transfer irregularities.

58.      This concealment misled Plaintiff on amounts owed, including the triple $4,097.59 charges, causing increased interest, inflated escrow and fees, inability to cure, equity loss, and forced sale.

59.      Plaintiff seeks actual damages, statutory damages (up to $2,000 per violation for pattern-or-practice misconduct), and attorney's fees.

## COUNT III

## VIOLATION OF FDCPA (15 U.S.C. §§ 1692e, 1692f)

60.      Plaintiff realleges and incorporates paragraphs 1 through 49 as if fully set forth herein.

61.     Debt collectors are prohibited from false representations, collecting unauthorized amounts, misrepresenting creditor identity, debt status, or inflating fees.

62.     Defendants violated the FDCPA by misrepresenting creditor identity, collecting fraudulent escrow charges, charging unauthorized attorney fees, issuing post-judgment statements, and misrepresenting payoff amounts.

63.     Plaintiff seeks statutory damages, actual damages, and attorney's fees and costs.

## COUNT IV
## VIOLATION OF FCCPA (FLA. STAT. §§ 559.72(9), (10))

64.     Plaintiff realleges and incorporates paragraphs 1 through 49 as if fully set forth herein.

65.     The FCCPA prohibits asserting non-existent legal rights or enforcing debts via false representations.

66.     Defendants violated the FCCPA by enforcing a judgment with fraudulent charges, misrepresenting escrow advances, misrepresenting and accepting a fraudulent payoff quote, misrepresenting knowledge of Plaintiff's father's death, and misrepresenting successor rights to unlawfully charge a deceased borrower post-SII notice.

67.    Plaintiff seeks actual damages, statutory damages, punitive damages, and attorney's fees.

## COUNT V
## BREACH OF CONTRACT
## AND IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

68.    Plaintiff realleges and incorporates paragraphs 1 through 49 as if fully set forth herein.

69.    Under Federal and Florida law, mortgage servicers breach contractual obligations by imposing unauthorized charges or acting in bad faith.

70.    Defendants breached by charging non-occurring escrow advances, inflating attorney fees, misapplying payments, denying successor rights, foreclosing during pending review, and mismanaging insurance and taxes.

71.    As a direct and foreseeable result of obtaining judgment while loss mitigation remained pending, and as a result of inflated payoff demands, Plaintiff was unable to refinance, assume, or cure the loan and was compelled to sell the Property. Plaintiff seeks damages for overpayments, increased interest, equity loss, and forced-sale costs.

## COUNT VI
## WRONGFUL FORECLOSURE

72.     Plaintiff realleges and incorporates paragraphs 1 through 49 as if fully set forth herein.

73.     A foreclosure is wrongful when pursued in violation of servicing protections or in bad faith with inflated charges.

74.     Defendants' scheme involved successor denial, dual-tracking, fee inflation, fraudulent escrow, assumption refusal, mid-dispute transfer, and creditor misrepresentation.

75.     Plaintiff seeks equity loss exceeding $150,000, transactional costs, statutory damages, and punitive damages.

**COUNT VII**

**VIOLATION OF GARN-ST. GERMAIN ACT**
**(12 U.S.C. § 1701j-3(d))**

76.     Plaintiff realleges and incorporates paragraphs 1 through 49 as if fully set forth herein.

77.     The Act prohibits enforcing due-on-sale clauses against heirs and mandates assumption without cure requirements.

78.     SPS violated 12 U.S.C. § 1701j-3(d)) by arbitrarily requiring the loan be brought current prior to assumption, arbitrarily requiring modification before

assumption; and then: arbitrarily denying assumption, requiring cure, imposing occupancy mandates, and applying unauthorized overlays.

79.    Plaintiff seeks forced-sale damages and equity loss exceeding $150,000.

## COUNT VIII
## FRAUD / NEGLIGENT MISREPRESENTATION

80.    Plaintiff realleges and incorporates paragraphs 1 through 49 as if fully set forth herein.

81.     Defendants made material false statements regarding creditor identity, escrow disbursements, fee authorizations, amounts owed, successor rules, and cure necessities. Defendants made specific material misrepresentations, including:

(a) SPS represented in correspondence that Plaintiff was not a confirmed successor-in-interest despite prior submission of probate documentation;

(b) On February 19, 2025 Kass Shuler transmitted a draft judgment reflecting a total of $198,144.41;

(C)  On February 20, 2025 Kass Shuler submitted a revised judgment including duplicate "prior servicer advances" of $4,097.59 and additional charges;

(d) In August 2025, Kass Shuler represented in writing that $223,301.16 was required to cure the loan;

(E ) Prior to Kass Shuler's cure quote, Selene issued a written payoff quote reflecting an amount thousands of dollars lower and valid through August 2025.

82.     These statements concerned the amount owed, creditor authority, and cure requirements, and were material to Plaintiff's decision to wire funds and sell the Property.

83.     Plaintiff reasonably relied on the written cure amount provided by Kass Shuler by wiring $223,301.16 proceeding with a distressed sale to avoid foreclosure.

84.     Plaintiff reasonably relied thereon under duress.

85.     Damages include judgment, sale, fees, property loss.

## COUNT IX
## CIVIL CONSPIRACY

86.     Plaintiff realleges and incorporates paragraphs 1 through 49 as if fully set forth herein.

87.     Upon information and belief, SPS, Kass Shuler, and U.S. Bank coordinated the preparation, submission, and enforcement of the foreclosure judgment containing duplicate and unsupported escrow advances.

88.      Overt acts included submission of the judgment, issuance of payoff demands on, and continued collection activity after servicing transfer.

89.      Defendants agreed to inflate judgment, conceal creditor identity, transfer mid-dispute, and push foreclosure despite protections.

90.      Overt acts included fraudulent escrow charges and misrepresentation.

92.      Plaintiff seeks damages as alleged.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants, jointly and severally, granting:

A. Compensatory damages including lost equity, transaction costs, excessive interest, and improper fees;

B. Statutory damages under RESPA, FDCPA, and FCCPA;

C. Punitive damages;

D. Declaratory and injunctive relief;

E. Attorney's fees and costs;

F. Such other relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues so triable.

Dated: February 11, 2026 (3300 words)

Respectfully submitted,

/s/ Brian Tuttle

3424 Belmont Blvd

Sarasota, FL 34232

941-328-9015

Designated email: k6v9581k3@gmail.com